IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROTHSCHILD DIGITAL CONFIRMATION, LLC, <br><br>         Plaintiff, <br>    v. <br><br> FIELD AGENT, INC., <br><br>         Defendant. | C.A. No. 20-168-MN <br><br> **JURY TRIAL DEMANDED** |

### FIELD AGENT, INC.'S OPENING BRIEF IN SUPPORT OF ITS <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
Wilmington, DE 19801
(302) 652-5070 Telephone
(302) 652-0607 Facsimile
janderson@fr.com

Neil J. McNabnay
Ricardo J. Bonilla
Theresa M. Dawson
Rodeen Talebi
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 45201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com; rbonilla@fr.com;
tdawson@fr.com; talebi@fr.com

ATTORNEYS FOR DEFENDANT
FIELD AGENT, INC.

Dated: February 26, 2020

# **TABLE OF CONTENTS**

**Page(s)**

I.      FACTUAL BACKGROUND…………………………………………………...2

II.     ARGUMENT ...................................................................................................5

     A.      This Case Should Be Disposed of at the Pleading Stage Through
          Rule 12(b)(6)...............................................................................................5

     B.      The Law of 35 U.S.C. § 101. ......................................................................6

     C.      The Patent-in-Suit is Invalid under 35 U.S.C. § 101. ................................7

          1.      The independent claims of the '872 Patent are patent-
               ineligible. ........................................................................................7

          2.      There are no claim construction or factual disputes
               preventing the Court from ruling on this issue at the Rule
               12 stage. ........................................................................................20

III.    CONCLUSION...............................................................................................20

i

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)...................................................................................6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)...................................................................................... *passim*

*Ancora Tech., Inc. v. HTC Amer., Inc.*,
   --- F.3d ---, 2018 WL 6005021 (Fed. Cir. Nov. 16, 2018) ....................................19

*Ancora Technologies, Inc. v. HTC America, Inc.*,
   908 F.3d 1343(Fed. Cir. 2018)...............................................................................17

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015)...............................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................9

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012).........................................................................9, 20

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)........................................................................22, 24

*Bilski v. Kappos*,
   561 U.S. 593 (2010).......................................................................................9, 10, 11

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)..........................................................5, 12, 22, 23

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014)........................................................................17, 20

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019)................................................................................6

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014).....................................................................23

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).......................................................................12, 20

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
　　880 F.3d 1356 (Fed. Cir. 2018)........................................................................16

*Cuvillier v. Taylor*,
　　503 F.3d 397 (5th Cir. 2007) .............................................................................9

*CyberSource Corp. v. Retail Decisions, Inc.*,
　　654 F.3d 1366 (Fed. Cir. 2011)........................................................................10

*Data Engine Techs. LLC v. Google LLC*,
　　906 F.3d 999 (Fed. Cir. 2018)..........................................................................16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
　　773 F.3d 1245 (Fed. Cir. 2014)........................................................................21

*Diamond v. Chakrabarty*,
　　447 U.S. 303 (1980)..........................................................................................10

*Diamond v. Diehr*,
　　450 U.S. 175 (1981)..........................................................................................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
　　830 F.3d 1350 (Fed. Cir. 2016)..........................................................16, 17, 21

*Enfish, LLC v. Microsoft Corp.*,
　　822 F.3d 1327 (Fed. Cir. 2016)..................................................................12, 21

*Finjan, Inc. v. Blue Coat System, Inc.*,
　　879 F.3d 1299 (Fed. Cir. 2018)........................................................................12

*Fort Props., Inc. v. Am. Master Lease LLC*,
　　671 F.3d 1317 (Fed. Cir. 2012)........................................................................11

*Gibbs v. Coupe*,
　　No. CV 14-790-SLR, 2015 WL 6870033 (D. Del. Nov. 6, 2015)..........................9

*Gottschalk v. Benson*,
　　409 U.S. 63 (1972)............................................................................................10

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
　　850 F.3d 1332 (Fed. Cir. 2017)............................................................... *passim*

*Intellectual Ventures I LLC v. Symantec Corp.*,
　　838 F.3d 1307 (Fed. Cir. 2016)........................................................13, 14, 15, 20

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
　　132 S. Ct. 1289 (2012).................................................................................10, 11

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)..........................................................................15

*Parker v. Flook*,
  437 U.S. 584 (1978)......................................................................................11, 17

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017)..........................................................................16

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)......................................................................12, 15

*Secure Cam, LLC v. Tend Insights, Inc.*,
  351 F. Supp. 3d 1249 (N.D. Cal. 2018) ..........................................................14, 15

*In re TLI Communications*,
  823 F.3d at 611 ..............................................................................5, 14, 15, 19

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)......................................................................15, 18

*Ultramercial, Inc. v. Hulu*,
  LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ..................................9

*Victaulic Co. v. Tieman*,
  499 F.3d 227 (3rd Cir. 2007) ..............................................................................9

**Statutes**

35 U.S.C. § 101.................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12.....................................................................................5, 24

Fed. R Civ. P. 12(b)(6)..............................................................................6, 9

U.S. Patent No. 7,456,872.................................................................... *passim*

Associating images with information about the images is an abstract concept ineligible for patent protection. The claims of U.S. Patent No. 7,456,872, which Plaintiff Rothschild Digital Confirmation, LLC ("RDC") asserts in this action against Defendant Field Agent, Inc. ("Field Agent"), are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea. The Federal Circuit has addressed patents directed to a similar concept and found their claims to be directed to patent-ineligible subject matter. *See TLI Communications LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016) (finding ineligible claims directed to automatic analysis, classification, and categorization of images).

People have associated images with information about the images for many years. Even the existing digital cameras at the time of the '872 Patent's filing allowed users to "associate information to each image," but according to the patent, this was "a very time consuming task." '872 Pat., 1:54–58. The goal of the '872 Patent was to provide "techniques for easily associating information about an image to the image and using the information to control and retrieve the image." *Id.*, 2:1–2. But using existing technologies to allow users to associate images with information about the images is not a technological improvement, an inventive way of applying conventional technology, or even new as of November 29, 2004. Moreover, none of the claims recite any specific hardware or software; instead, the specification discloses only that the alleged invention uses generic computer components and software to perform conventional activities. Abstract ideas like this, when implemented using conventional computer components, are not eligible for patent protection under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). This is especially true if the abstract idea is not directed to any improvement in technology and any purported "inventive concept" is limited to improving the abstract idea itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

RDC included allegations of inventiveness in its complaint. *See, e.g.*, Compl., ¶ 24. These allegations consist of legal conclusions and characterizations of the claimed invention that are contradicted by the patent's specification. While pleadings may properly be considered for a Rule 12 motion to dismiss (subject to the *Twombly/Iqbal* pleading standards), the pleadings cannot be used to alter or rewrite the terms of a patent or to confer eligibility on otherwise ineligible subject matter. *Cf Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). They are thus irrelevant to the § 101 analysis.

Resolving these issues does not require more discovery or claim construction. RDC's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources further litigating an invalid patent, Field Agent requests the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I.    FACTUAL BACKGROUND

The '872 Patent is relates to associating images with data. *See* '872 Pat., 1:22–29. The applicant explained and admitted that associating information with an image existed in the prior art, but that it was "a very time consuming and arduous affair." *Id.*, 1:35–47. He further admitted that even when using existing digital cameras, users could "associate information to each image," but it was "a very time consuming task." *Id.*, 1:54–58. Thus, as the applicant explained, the goal of the alleged invention was to provide "techniques for easily associating information about an image to the image and using the information to control and retrieve the image," and "associating location information, date and time information and user verification information to a captured

image." *Id.*, 2:1–6. Figures 3A and 3B in the patent depict an embodiment of the alleged invention as a generic mobile phone that existed in the prior art:



FIG. 3A                    FIG. 3B

*Id.*, Figs. 3A and 3B; see also id., 7:59–35. The specification further states that "FIG. 2 is a block diagram of various modules included in a device for capturing images and embedding information in the images in accordance with the present disclosure" (*id.*, 2:52–54). But the purported solution the applicant provided for associating images with information about the images consists of nothing more than the use of conventional components and processes. The applicant makes this clear through his own language in the specification. For example, the specification makes the following concessions about the use of conventional components and processes:

"The digital file format utilized to store the image . . . may include standard file formats which currently exist or will exist in the future for example jpeg, tiff, bmp, gif, pcx, png or other file formats." *Id.*, 4:35–38;

"[M]ultiple images . . . may be stored in various video formats which currently exist which currently exist including Divx, Mpeg-2, Mpeg-3, Mpeg-4, Mpeg-5, Quicktime, or other video formats." *Id.*, 4:38--41;

"This display may be in any current form in the art, including Liquid Crystal Displays (LCD), Light emitting diode displays (LED), Cathode Ray Tube Displays (CRT) or any other type of display currently existing or existing in the future." *Id.*, 4:43–47;

"The hardware device 100 of the present disclosure will contain a user input module . . . [which] are standard and currently available on many electronic devices including portable digital assistants (PDAs) and cellular telephones." *Id.*, 4:55–64;

"The device 100 will also include a user verification module . . . [such as a] finger print reader, . . . [for example] the BioTouch™ fingerprint reader commercially available from Identix Incorporated of Minnetonka, Minn." *Id.*, 5:38–42;

"The locational information module 134 may include a receiver and antenna employing conventional locational information processing technology such as Global Positioning Satellite (GPS) Technology . . . or any other available locational technology . . . ." *Id.*, 5:54–63;

"The date and time module 136 will use standard computer chip processing technology widely in use, or alternatively, input from locational information module 134, e.g., a GPS receiver, to supply the date and time of the image capture." *Id.*, 6:5–9;

"The encryption module 140 will use conventional code encryption algorithms currently in use or that will be in use in the future such as DES, Triple DES, Blowfish, RSA, MD5, etc. to encrypt the data . . . ." *Id.*, 6:32–35;

"The wireless connection will operate under any of the various known wireless protocols [such as] Bluetooth™ interconnectivity . . . or any other type of communication protocols or systems currently existing or to be developed for wirelessly transmitting data." *Id.*, 6:51–56;

"When the images are printed out, the computer that prints the image will cause the image to be printed with symbology that encodes that file name of the image and file location of the image . . . [which] may be in any form currently practiced in the art including barcodes (e.g., UPC, EAN, PDF417, etc.), photosymbols, standard or specialized text, etc., or any future type of symbology." *Id.*, 7:8–20; and

4

"The device 100 will further include an integrated scanning module . . . [and k]nowledge of the art reveals that many different types of scanners currently exist . . . ." *Id.*, 7:23–33.

That is, the invention requires only a conventional mobile phone with conventional functionalities.

## II.    ARGUMENT

### A.    This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6).

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015) (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject

matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J.,

concurring). In those situations, claim construction is not required to conduct a § 101 analysis.

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e

perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity

determination under § 101.").

### B.     The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any

new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also,

the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and

**abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract

ideas are ineligible for patent protection because a monopoly over these ideas would preempt their

use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are

not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting

*Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves

two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible

concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains an abstract idea, the court

evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements

that is sufficient to ensure that the patent in practice amounts to significantly more than a patent

upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the

abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs.*

*v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in

the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp.*

*v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## C. The Patent-in-Suit is Invalid under 35 U.S.C. § 101.

RDC's claims regarding the '872 Patent should be dismissed. The claims of the asserted patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of associating images with information about the images. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because RDC has failed to state a claim upon which relief may be granted, Field Agent respectfully requests that the Court grant its motion and dismiss RDC's '872 Patent claims with prejudice.

### 1. The independent claims of the '872 Patent are patent-ineligible.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. Alice, 134 S. Ct. at 2355. Under any plausible reading, the claims of the patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of associating images with information about the images. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

7

(a) **_Alice_ Step 1: The independent claims are directed to the abstract idea of associating images with information about the images.**

Claim 1 of the '872 Patent1 is representative of the independent claims.2 See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc., 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether this claim is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. _SAP Am., Inc. v. InvestPic, LLC_, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." _Finjan, Inc. v. Blue Coat System, Inc._, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" _Id._ (quoting _Enfish, LLC v. Microsoft Corp._, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); _see BSG Tech_, 899 F.3d at 1290. The claimed advance of Claim 27 of the '872 Patent is verifying a user's identity, capturing an image, and associating some information with the image. The claim quickly reduces down to the bare idea of associating images with information about the images. That is an abstract idea

---

[1] Claims 27, 28, 38, and 39 of the '872 Patent were canceled by the PTAB in IPR2015-00624 on December 7, 2015. _See_ IPR2015-00624, Paper No. 24. Accordingly, this brief will focus on Claim 1, which RDC asserts and has not yet been cancelled by any post-grant proceeding.

[2] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. _Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n_, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

ineligible for patenting. Claim 1 is not directed to any specific means or method for improving

technology—it is directed to the abstract idea of associating images with information about the

images. The patent recognizes that associating images with information about the images was

something that humans performed manually, but that it was a difficult and time consuming task:

> In the prior art, when one desires to catalog these images in a particular order, they
> usually are left to placing these images **manually** into photograph albums. This is
> a very extensive, manual procedure requiring a significant amount of time. In
> addition, it is very limited with regard to the amount of information that can be
> associated with the image in a quick and easy manner. While some photo albums
> allow the **writing and placing of text**, the entering of this data is a very time
> consuming and arduous affair. Once having sorted these images into particular
> albums which may represent categories of interest, it is extremely difficult to
> retrieve and/or reorganize the images into other categories.

*Id.*, 1:31–47 (emphasis added). The patent further states, "With the advent of digital cameras and

digital imaging, the process of organizing images and associating information with the images has

become even more difficult." *Id.*, 1:48–50. Thus, the goal of the purported invention was to address

the stated problems with associating images with information about the images by providing

"techniques for easily associating information about an image to the image and using the

information to control and retrieve the image." *Id.*, 2:1–3. This is a concept, not an invention, and

thus ineligible for patenting. *See, e.g., Epic IP*, 2018 WL 6107029 at *5 ("The idea of a chat session

separate from the original website is not an invention; it is a concept. The asserted claims of the

'599 patent recite the concept, but not the way to implement it.").

In *Intellectual Ventures*, the invention was related to "automatic deferral and review of e-

mail messages and other data objects in a networked computer system, by applying business rules

to the messages as they are processed by post offices" and the claims generally recited "the

patented system as a 'post office'—albeit an electronic one." *Intellectual Ventures*, 838 F.3d at

1317. The Federal Circuit agreed with the district court that "the asserted claims . . . are directed

to human-practicable concepts, which could be implemented in, for example, a brick-and-mortar post office." *Id*. The court further held that "the claims are directed to an abstract idea" because they are "directed to a conventional business practice—the screening of messages by corporate organizations—in the context of electronic communications," and held that "the claims are directed to an abstract idea." *Id*. at 1318.

In *In re TLI Communications*, the invention was "relate[d] to a method for recording, communicating and administering [a] digital image." *In re TLI Communications*, 823 F.3d at 611. The Federal Circuit found that the asserted claims were "pertaining to methods of organizing human activity," and thus, "directed to the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 613. The court further held that "attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner is a well-established 'basic concept' sufficient to fall under *Alice* step 1." *Id.* Similarly, in *Secure Cam*, the District Court for the Northern District of California found claims directed to automatic analysis and categorization of images invalid under both *Alice* steps. *Secure Cam, LLC v. Tend Insights, Inc.*, 351 F. Supp. 3d 1249 (N.D. Cal. 2018). In *Secure Cam*, the "focus of the claims [was] on collecting digital images, analyzing them and categorizing." *Id*. at 1254. The court found that "the claims at issue [were] directed to the abstract idea of analyzing and automatically categorizing digital images." *Id*. at 1255. The court further found that the claims "describe physical components such as a digital camera, but the physical components 'merely provide a generic environment in which to carry out the abstract idea.'" *Id*. (quoting *In re TLI Communications*, 823 F.3d at 613). And because "the physical components described in the claims [did] not add an inventive concept," the court found the claims not to be patent-eligible. *Id.* at 1257.

Like the claims in *Intellectual Ventures*, *In re TLI Communications*, and *Secure Cam*, Claim 1 of the '872 Patent is abstract because it simply takes the concept of associating images

with information about the images and attempts to implement it through existing computer and wireless technologies. The claims in *Intellectual Ventures* were directed to "a **conventional business practice** . . . in the context of electronic communications" (*Intellectual Ventures*, 838 F.3d at 1318 (emphasis added)), whereas Claim 1 is directed to a **conventional human practice** in the context of capturing and organizing images. And similar to the claims *In re TLI Communications* and *Secure Cam*, Claim 1 is directed to "**organizing human activity**" to capture and organize images. *In re TLI Communications*, 823 F.3d at 613 (emphasis added). The idea claimed in Claim 1 is just as abstract as that of the *Intellectual Ventures*, *In re TLI Communications, and Secure Cam* claims because it is "directed to human-practicable concept" of associating images with information about the images. *See Intellectual Ventures*, 838 F.3d at 1317; *see also In re TLI Communications*, 823 F.3d at 613; *Secure Cam*, 351 F. Supp. 3d at 1255.

The functional nature of Claim 1's limitations further supports its abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. For example, in *SAP America*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). Therefore, the

11

question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for associating images with information about the images—it requires only that well-known components in a generic mobile device perform their conventional function. As just a few examples, "[the c]apture module 122 will capture an image desired by the user in digital form" ('872 Pat., 4:13–14), "[t]he user verification module 132 will indicate and verify the identity of the user of the device 100 at the time of the image capture" (*id.*, 4:27–29), and the "user input module 124 . . . either receive[s] user instructions via text input by the way of a standard keyboard interface, or a character recognition capture device which translates user text input into alphanumeric characters" (*id.*, 4:55–59). These "modules" are defined by their result rather than any specific description of how they are to operate. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe how the desired result—associating images with information about the images—is achieved. It merely recites broad computer functions such as verifying a user, receiving date from the user, capturing an image,

determining identity of the user, determining location, determining date and time, associating date with the image, and encrypting that information. It does not claim how to implement any of these broad functions. The mechanism to implement the idea is impermissibly unbounded in scope.

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit recently addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343(Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at *4 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '872 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That Claim 1 is limited to a computer and wireless environment, such as a mobile device, does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker v. Flook,* 437 U.S. 584 (1978), stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online

13

transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Claim 1 is directed to an abstract idea even if its limitations require practicing that idea on a mobile phone.

Further, the fact that Claim 1 of the '872 Patent is a system claim does not affect the patent eligibility analysis under § 101. The Supreme Court has made clear that reciting a handful of generic computer components configured to implement the same idea does not convert an ineligible abstract idea into eligible subject matter. *Alice*, 134 S. Ct. at 2359. Claim 1 includes "a user verification module," "a capture module," "a locational information module," "a date and time module," "a processing module," and "an encryption module," but again, these modules are functional computer components for practicing the abstract idea and do not confer eligibility. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) (holding claims ineligible despite presence of processor and multiple components adapted to perform certain functions); *Two-Way Media*, 874 F.3d at 1337–38 (same).

The function-heavy nature of the claimed "modules" in the '872 Patent is very similar to that in the claims held ineligible by the Federal Circuit in *Capital One*. In that case, the claims covered an apparatus comprising a processor and multiple components that performed certain functions. *Id.* at 1339. The Federal Circuit found the claimed components did not confer eligibility because the claims did nothing more than recite the functions of those components. *Id.* at 1342 ("Rather, the claims recite both a generic computer element—a processor—and a series of generic computer "components" that merely restate their individual functions—i.e., organizing, mapping, identifying, defining, detecting, and modifying. That is to say, they merely describe the functions of the abstract idea itself, without particularity."). The same is true here. Claim 1 of the '872 Patent includes a generic "user verification module," "capture module," "locational information module,"

14

"date and time module," "processing module," and "encryption module" but the claims describe these "modules" only by restating what they are configured to do, without particularity. *See*, *e.g.,* '872 Pat., Cl. 1 ("<u>**a user verification module** for verifying an identity of a user of the device</u>, wherein upon verification, the user verification module enables operation of the device and provides an assignment to the user") (emphasis added). The elements of Claim 1 are thus just as abstract as the components recited in the claims of *Capital One*. *See Capital One*, 850 F.3d at 1342. The claims do not contain the specificity that may change claims from function-dependent (ineligible) to computer-improving (eligible). *Cf. Ancora Tech., Inc. v. HTC Amer., Inc.*, --- F.3d ---, 2018 WL 6005021, at \*4 (Fed. Cir. Nov. 16, 2018) (holding claims eligible because they were directed to "a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**") (emphasis added).

The claimed advance of the independent claims is the abstract concept of providing "techniques for easily associating information about an image to the image and using the information to control and retrieve the image." '872 Pat., 2:1–3. This concept is an abstract idea, not an invention, and accordingly, the independent claims fail the first step of the *Alice* analysis.

> **(b)      *Alice* Step 2: The independent claims do not contain an inventive concept sufficient to confer patent eligibility.**

The independent claims of the '872 Patent are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using well-known components (i.e., an imaging device) to perform its conventional function (i.e., capturing an image) and then associating some data with that image. As explained above, the abstract functional descriptions in the independent claims of the '872 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615

15

(Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I*, nothing in Claim 1 "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (citing omitted).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the independent claims of the '872 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77.

Each of the modules recited in Claim 1 of the '872 Patent is described only at a high level of generality as "verifying an identity of a user," "capturing an image," "creating a digital image file," "determining a location of the device," " determining a date and time," "associating . . . [data] to the digital image file," and "encrypting" data. To accomplish these high level functions, the patent recites the need for only off-the-shelf, conventional computer technologies. For example, "verifying a user" could be done using a "finger print reader, . . . [such as] the BioTouch™ fingerprint reader commercially available from Identix Incorporated of Minnetonka, Minn" (*id.*, 5:38–42); "capturing an image" can be done using a generic digital camera (*see id.*, 4:13–41); "creating a digital image file" is just creating a "digital file [that] contain[s] the user inputted information" (*id.*, 5:17–18); "determining a location of the device" could be done by "employing

16

conventional locational information processing technology such as Global Positioning Satellite (GPS) Technology, Loran Technology, or any other available locational technology" (*id.*, 5:54–63); "determining a date and time" could be done via "standard computer chip processing technology widely in use" (*id.*, 6:5–9); and "encrypting" data can be done using "conventional code encryption algorithms" (*id.*, 6:32–35). Claim 1 simply recites "a user verification module," "a capture module," "a locational information module," "a date and time module," "a processing module," and "an encryption module," to perform these high-level functions.

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *id.* at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claims 1 and 27 of the '872 Patent shows any unconventional methodology that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the '872 Patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355.

Thus, there is no limitation in the independent claims that could be considered an inventive concept under step two of the *Alice* test.

Even if the ordered combination of claimed limitations were novel or arguably unconventional, the question remains whether these limitations actually improve computer functionality or merely the abstract idea itself. Thus, "[a]t Alice step two, it is irrelevant whether [associating images with information about the images] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (holding claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs*, 838 F.3d at 1262 (holding a claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"); *cf. Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379–80 (Fed. Cir. 2015) (rejecting the argument that a newly discovered natural phenomenon can supply an inventive concept).The dependent claims of the '872 Patent are not patent eligible.

The dependent claims of the '872 Patent add additional limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the dependent claims suffer from the same flaws as the independent claims, despite their additional limitations, and should therefore be treated the same as the independent claims.

Some dependent claims recite additional limitations for "a microphone" (Cl. 2); "a display module" (Cls. 3, 4, 7, 8, 25); "a character recognition capture device" (Cls. 5, 6); "a storage

18

module" (Cls. 9, 10); "a transmission module" (Cls. 11, 12, 18); "an auxiliary input module" (Cl. 13); "a scanning module" (Cls. 14, 15); "a communication module" (Cl. 16); "an audio output device" (Cl. 17); "an input module" (Cl. 22); and "a picture sequence module" (Cl. 26). The claimed "modules," however, are also described in purely functional terms and suffer from the same results-oriented (and thus ineligible) claim language as independent claims 1 and 27. And the specification makes clear that these modules can be implemented using generic components that existed in prior art. For example, the claimed "display module" could be "in any current form in the [existing] art, including Liquid Crystal Displays (LCD), Light emitting diode displays (LED), Cathode Ray Tube Displays (CRT) or any other type of display currently existing" (*id.*, 4:43–47), and the claimed "user input module" was "standard and . . . available on many electronic devices including portable digital assistants (PDAs) and cellular telephones" (*id.*, 4:55–64).

Some dependent claims recite insignificant pre- or post-solution activity, such as displaying at least one question to the user. *See id.*, Cl. 18; see also id., Cls. 19-21, 23-26, 29-37. Each of these claims, like Claim 1 of the '872 Patent, is not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). Because all of these claims are directed to the abstract idea of associating images with information about the images and none includes any inventive concept, the claims similarly fail both steps of the *Alice* test.

The dependent claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the abstract concept of associating images with information about the images, and the Federal Circuit has been clear that the abstract idea

itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290. Accordingly, the dependent claims also fail both steps of the *Alice* test and should be found ineligible.

> **2.    There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.**

The issue of the patent eligibility of the '872 Patent is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis, as RDC has not proposed any constructions of the '872 Patent's terms that would alter the ineligibility of the claims. Additionally, there are no factual disputes on this record. The '872 Patent does not assert any unconventional mechanism of implementing the claimed idea.

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id*. Here, in contrast, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner.

## III.    CONCLUSION

For the foregoing reasons, Field Agent respectfully requests that the Court dismiss RDC's claims based on the '872 Patent for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Field Agent requests dismissal with prejudice.

Dated: February 26, 2020

FISH & RICHARDSON P.C.

By: */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (#4515)
    222 Delaware Avenue, 17th Floor
    Wilmington, Delaware 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay
    Ricardo J. Bonilla
    Rodeen Talebi
    1717 Main Street, Suite 5000
    Dallas, Texas 19001
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com;
    rbonilla@fr.com;
    rtalebi@fr.com

ATTORNEYS FOR DEFENDANT
FIELD AGENT, INC.